**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTHONY NABORS,

               Plaintiff,

v.

AUTO SPORTS UNLIMITED,
INC., and CHARLES SUTTER,

               Defendants.
_____/

CASE NO. 06-10221
HON. LAWRENCE P. ZATKOFF

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 7, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court upon Defendant Auto Sports Unlimited, Inc.'s, Motion for

Summary Judgment. *See* Docket #18. Plaintiff filed his response on January 15, 2006, and

Defendant has since replied. The Court finds that the facts and legal arguments are adequately

presented in the parties' papers and the decision process would not be significantly aided by oral

argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion

be resolved on the briefs submitted. For the reasons set forth below, Defendant's motion will be

GRANTED.

## II.  BACKGROUND

This case arises under the Odometer Act, 49 U.S.C. §§ 32701-32711. Plaintiff purchased a

used Jeep from Defendant Charles Sutter in October 2005; however, the facts of this case date back

to March 30, 2005. (*See* Def.'s Ex. A.) On that date, Auto Sports Unlimited, Inc. ("Auto Sports"),

purchased the Jeep from State Farm Mutual Auto Insurance Company at an auto auction in Indiana.

(*See id.*) Auto Sports is a used auto parts dealer which recently opened a used car dealership in

Holland, Michigan. Auto Sports took an Indiana title to the Jeep, which was branded as salvaged.[1]

Subsequently, Auto Sports advertised the Jeep for sale over the internet, which drew the attention

of Defendant Sutter. Mr. Sutter had previously purchased a salvaged motorcycle from Auto Sports.

In July 2005, Sutter, who lives in Clinton Township, Michigan, drove to Holland to purchase

the Jeep. While at Auto Sports' dealership, Mr. Sutter met with Auto Sports' sales representative

Justin Misner, who showed him the Jeep, including the mileage. (*See* Sutter Dep. at 51-54.) Satisfied

with the Jeep, and aware that it was branded as salvaged on the title, Mr. Sutter proceeded to close

the sale. Mr. Misner presented Mr. Sutter with the appropriate paperwork including the Indiana title,

which showed the correct mileage of 61,836 miles, and the fact that it was considered a salvaged

vehicle. (*See id.* at 18, 100; Def.'s Ex. D.) However, because Auto Sports' title clerk, Wendy

Polinsky, was not present at the time, Mr. Sutter was not able to complete all of the paper work on

that day. (*See* Misner Aff. ¶ 6.) Nevertheless, Mr. Sutter paid Auto Sports' $4500 for the Jeep and

later had it towed to his residence. (*See* Sutter. Dep. at 54.) Thereafter, Auto Sports' sent Mr. Sutter

further paper work necessary to complete the sale of the Jeep, including the Indiana title, which

needed Mr. Sutter's signature, and an application for a Michigan title. (*See* Def.'s Ex. F.) Before any

---

[1]Motor vehicle titles "are branded with various legally required designations meant to convey certain information about the history of the vehicle." *Locascio v. Imports Unlimited, Inc.*, 309 F.Supp.2d 267, 268 fn. 1 (D. Conn. 2004). Such designations include "totaled," "salvaged," and "rebuilt." *Id.* "A salvage certificate of title authorizes the holder of the title to possess, transport, but not drive upon a highway, and transfer ownership in, a vehicle." MICH. COMP. LAWS ANN. § 257.217c(12). However, a vehicle with a salvage certificate of title may be driven on a highway after an inspection by state licensed inspector. *See id.*

2

of the title work was complete, however, Mr. Sutter had the Jeep repaired and recertified for highway use, and placed an ad in Truck Trader Magazine, advertising the Jeep for sale and listing the mileage as "63k." (*See* Sutter Dep. at 62-63; Def.'s Ex. G.)

On October 8, 2005, after seeing Mr. Sutter's ad in Truck and Trader, Plaintiff went to Mr. Sutter's residence to inquire about purchasing the Jeep. (*See* Pl.'s Aff. ¶ 2.) After some discussion, Plaintiff and Sutter agreed on a price of $9000. (*See id.*) The mileage on the Jeep on October 8, 2005, was 63,305 miles, consistent with the advertisement that Plaintiff viewed. (*See* Def.'s Ex. I; Sutter Dep. at 76.) At this time, Mr. Sutter realized that the title to the Jeep was not in his name: he had not completed the paperwork sent to him by Auto Sports in July. (*See* Sutter Dep. at 61.) As a result, the title certificate in Mr. Sutter's possession was still the Indiana salvage title.

In an effort to complete the sale Mr. Sutter called Auto Sports and spoke with Justin Misner, who knew Mr. Sutter both from the Jeep transaction and the previous motorcycle sale. (*See id.* at 63-68.) In order to facilitate Mr. Sutter's transaction with Plaintiff, Mr. Misner offered to process the title work transferring the title first from Auto Sports to Mr. Sutter, and second from Mr. Sutter to Plaintiff. (*See id.* at 63; Misner Dep. at 59-60.) Mr. Misner did not know this would not be possible until Auto Sports' title clerk, Wendy Polinsky, informed him that Auto Sports could only process the title work for the sale to Mr. Sutter. (*See* Misner Dep. at 60.) In the meantime, Mr. Misner faxed Mr. Sutter a blank sales agreement and application for Michigan title, and instructed Mr. Sutter to fill in the required information for himself and Plaintiff. (*See* Sutter Dep. at 63-68.) Mr. Sutter did so and sent the forms back to Auto Sports. (*See id.* at 63-68.) Assuming that everything would be taken care of, Plaintiff paid Mr. Sutter $9000 and left with the Jeep.

Unbeknownst to either Plaintiff or Mr. Sutter, the title process did not go as planned. The State of Michigan processed Mr. Sutter's application for a Michigan title, which it issued on

3

December 14, 2005, reflecting the mileage of the Jeep on the date Mr. Sutter purchased it in July. (*See* Pl.'s Ex. 24.) However, because Auto Sports could not process the title work for Plaintiff, his application for title did not get sent to the state. Meanwhile, Plaintiff, who had sent a check to Auto Sports for the title processing, did not have a Michigan title for his Jeep, and made several complaints to the state regarding Auto Sports. (*See* Pl.'s Ex. 17.) Plaintiff subsequently filed suit in this Court claiming Defendants Auto Sports and Sutter violated the Odometer Act by not showing him the title to the Jeep when he purchased it from Mr. Sutter.

### III.  LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005); *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (citations omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

4

## IV.  ANALYSIS

The Odometer Act ("the Act") provides for a private cause of action where a defendant violates the Act with intent to defraud. *See* 49 U.S.C. § 32710. Defendant argues that Plaintiff cannot raise a genuine issue of material fact as to Defendant's intent to defraud. Defendant argues that under the Odometer Act ("the Act"), Plaintiff must demonstrate a specific intent to defraud as to the mileage of the vehicle. On the other hand, Plaintiff contends that he must only show a violation of the Act,[2] coupled with a general fraudulent intent. More specifically, Plaintiff argues that Defendant intended to defraud him as to the vehicle's status as a salvaged vehicle, rather than as to the mileage of the vehicle.

### A.  The Odometer Act

In passing the Odometer Act, and its predecessor, Congress sought  "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b). To accomplish these express goals, the Act imposes various requirements on persons transferring motor vehicles.  In addition to flat prohibitions on tampering with odometers, a transferor "of a motor vehicle [must] give the transferee a written disclosure (A) of the cumulative mileage registered by the odometer; or (B) that the mileage is unknown if the transferor knows that the mileage registered by the odometer is incorrect." 49 U.S.C. § 32705(a)(1). Transferors are prohibited from making false statements in these disclosures. *See* 49 U.S.C. § 32705(a)(2). Furthermore, Congress provided for criminal and civil penalties for violations of the Act, including a private civil action. *See* 49 U.S.C.

---

[2] While Plaintiff states that his claim is under the "Motor Vehicle and Information Cost Savings Act," this act has been recodified and is properly referred to as the "Odometer Act." *See Hamilton v. O'Connor Chevrolet, Inc.*, 2004 WL 1403711 at *8 fn. 6 (N.D. Ill. 2004).

§§ 32709-32710. Section 32710 states: "A person that violates this chapter or a regulation prescribed or order issued under this chapter, *with intent to defraud*, is liable for 3 times the actual damages or $1,500, which ever is greater." 49 U.S.C. § 32710(a) (emphasis added).

Based on a Congressional delegation of authority in § 32705, the National Highway Traffic Safety Administration ("NHTSA") promulgated regulations which "provide the way in which information is disclosed and retained under" the Act. 49 U.S.C. § 32705. The scope of these regulations is limited to "rules requiring transferors ... of motor vehicles to make written disclosure to transferees ... concerning the odometer mileage and its accuracy as directed by [the Act]." 49 C.F.R. § 580.1. Further, the purpose of the regulations "is to provide purchasers of motor vehicles with odometer information to assist them in determining a vehicle's condition and value by making the disclosure of a vehicle's mileage a condition of title ...." 49 C.F.R. § 580.2. Accordingly, "each title, at the time it is issued to the transferee, must contain the mileage disclosed by the transferor when ownership of the vehicle was transferred ...." 49 C.F.R. § 580.5(a). Additionally, transferors are required to disclose the mileage to the transferee in writing on the title. *See* 49 C.F.R. § 580.5(c).

The issue in the present case is whether the intent to defraud required for a civil action under the Act is a specific intent to defraud as to the mileage of a motor vehicle or a general intent to defraud. There is a split of authority on this issue, with the vast majority of courts concluding that the intent to defraud for the purposes of the Odometer Act is a specific intent to defraud as to mileage. The Court is persuaded by the majority of cases, and finds that "intent to defraud" under the Act must relate to mileage.

Since the predecessor to the Act was passed nearly thirty-five years ago, courts have consistently held that the intent to defraud giving rise to a private cause of action must go to the mileage of the vehicle. *See Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708 (7th Cir. 2005), *cert.*

6

*denied*, 126 S.Ct. 1432 (2006), (holding intent required for private civil action is specific intent to defraud as to mileage in light of Congress' express purpose); *Diersen v. Chicago Car Exchange*, 100 F.3d 481 (7th Cir. 1997); *Ryan v. Edwards,* 592 F.2d. 756, 760 (4th Cir. 1979) (stating that "[b]oth the language of the statute and its history show that it has one purpose: to enable the purchaser of a motor vehicle to know how many miles the vehicle has traveled, as a guide to its safety, reliability, and value."); *Locascio v. Imports Unlimited, Inc.*, 309 F.Supp.2d 267 (D. Conn. 2004) (holding intent required for private civil action is specific intent to defraud as to mileage given the statute's purpose and unlikelihood that Congress would intend for Act to provide federal remedy for all auto related fraud); *Compton v. Alta Vista Motors, Inc.*, 121 F.Supp.2d 932 (W.D Va. 2000) (same); *Michael v. Ferris Auto Sales*, 650 F.Supp. 975 (D. Del. 1987) (same); *Augusta v. Marshall Motor Co.*, 453 F.Supp. 912 (N.D. Ohio 1977) (stating that "[t]o find liability on the basis of this regulatory violation in the face of the plaintiff's admission that no error or omission in the actual odometer mileage disclosure has been made would run counter to the express concerns of the Act and regulations taken as a whole, and would constitute an unwarranted judicial extension of the statutory liability created by Congress ...."); *Purser v. Bill Campbell Porsche Audi, Inc.*, 431 F.Supp. 1235 (N.D. Fla. 1977) (stating that "the Act and the regulations were intended to address a single problem[:] odometer violations"); *Mayes v. Warren Hollon Motors*, 410 F.Supp. 768 (S.D. Ohio 1975); *Birdwell v. Hartsville Motors, Inc.*, 404 F.Supp. 625 (M.D. Tenn. 1975); *Palmer v. Web Industries, Inc.*, 2007 WL 45927 (D. Ariz. 2007) (reviewing cases and concluding that intent to defraud must be specific intent as to mileage); *Hunter v. Riverside Ford Sales, Inc.*, 2005 WL 1529541 (E.D. Mich. 2005) (same); *Hamilton v. O'Connor Chevrolet, Inc.*, 2004 WL 1403711 (N.D. Ill. 2004) (same).

      In light of this precedent, Plaintiff refers to a recent Eleventh Circuit opinion and two district

7

court opinions that broadly construe "intent to defraud" as a general fraudulent intent. *See Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318 (11th Cir. 2005); *Salmeron v. Highlands Ford Sales, Inc.*, 223 F.Supp.2d 1238 (D. N.M. 2002); *Yazzie v. Amigo Chevrolet, Inc.*, 189 F.Supp.2d 1254 (D. N.M. 2001). In *Owens*, the court concluded that the plain language of the Act did not limit the type of intent of the transferor, finding that by allowing a general intent to defraud to give rise to a cause of action, the purpose of the Act would be furthered. *See Owens*, 425 F.3d at 1324-25. The court reached this conclusion by examining the plain language of the Act, which does not expressly limit the phrase "with intent to defraud," to a specific intent to defraud as to mileage. *See id.* at 1321. The court stated that absent this limitation, "the statute's meaning is clear–if you violate the Odometer Act, and you do so with the intent to defraud your victim in any respect relating to the Odometer Act or the regulations passed pursuant to it, you are liable." *Id.* at 1321.

In reaching this conclusion, the court concluded that Congress' intent could be presumed from the plain language of the statute. However, the court read the relevant section of the Act in isolation and failed to recognize the limited scope of the Act: to stop odometer fraud. *See* 49 U.S.C. § 32701(b) (stating the purposes of the act "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers"). Furthermore, the court ignored the scope of the regulatory provisions promulgated by the NHTSA, which merely establish the way in which the required disclosures are to be made. *See Diersen*, 110 F.3d at 486 (finding NHTSA's rule making authority restricted to procedural or logistical rules and that Congress did not authorize agency, either explicitly or implicitly, to expand the law). This statutory reading renders superfluous the majority of the Act's provisions tailored to remedying one specific type of fraud. *See*, *e.g.*, 49 U.S.C. § 32703 (prohibiting tampering with odometers); 49 U.S.C. § 32704 (providing requirements for servicing or repairing odometers); 49

U.S.C. § 32705 (outlining mileage disclosure requirements). There would be no need to make any reference to odometers or mileage if Congress intended for any technical violation coupled with any fraudulent intent to give rise to a private cause of action. Thus the court in *Owens* read the plain language of the statute without reference to the express and limited purpose of the statute, and created a federal cause of action for fraud far beyond what Congress intended.[3]

The Court disagrees with Plaintiff that this conclusion violates the principles of statutory construction by reading words into the Act. Congress' express purposes were to eliminate odometer tampering and provide safeguards against odometer fraud for consumers. As a means of doing so, Congress displaced what would have been an ordinary action for common law fraud[4] with a statutory scheme that eased plaintiffs' proofs as to the elements of one type of fraud: odometer fraud. This is evident in Congress' findings in § 32701, which states:

Congress finds that–

(1)     buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle;

(2)     buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle; [and]

(3)     an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle ....

---

[3]The Court rejects the reasoning in *Yazzie v. Amigo Chevrolet, Inc.*, 189 F.Supp.2d 1254 (D. N.M. 2001), and *Salmeron v. Highlands Ford Sales, Inc.*, 223 F.Supp.2d 1238 (D. N.M. 2002), for the same reasons. Furthermore, neither the court in *Yazzie* nor the court in *Salmeron* considered the substantial precedent interpreting "intent to defraud" as specific intent to defraud as to the mileage.

[4]The traditional elements of fraud at common law are: (1) a false representation made by the defendant; (2) knowledge or belief on the part of the defendant that the representation is false; (3) an intention to induce the plaintiff to act or refrain from action in reliance upon the misrepresentation; (4) justifiable reliance upon the representation; and (5) damages caused by the reliance. *See* PROSSER & KEETON ON TORTS § 105 at 728 (5th ed. 1984).

49 U.S.C. § 32701. In other words, the common law fraud element of justifiable reliance on a material fact is presumed with respect to odometer fraud. Furthermore, under the Act, Plaintiffs do not need to show damages in order to state a claim. *See* 49 U.S.C. § 32710(a) (providing for damages of at least $1,500 in all cases). Thus the harm and causation requirements of common law fraud are also presumed in the case of odometer fraud. All plaintiffs need show under the Act is that the transferor of a motor vehicle violated the Act and had a fraudulent intent.

In reading the statute as a whole, it is clear that Congress did not seek to remedy all kinds of fraud relating to vehicle sales, but only fraud carried out through odometer tampering or misrepresenting the mileage. Thus, the intent necessary under the act must be the intent to defraud as to the material fact at issue, the milage of the motor vehicle. Plaintiff's reading of the statute would go far beyond these goals by essentially federalizing every type of fraud related to the sale of an automobile if it is in some way connected to a requirement, however minute, under the Odometer Act. The Court concludes that Congress did not intend this result, and the Court will not read the statute so as to federalize all fraud related to motor vehicle sales.

This conclusion is supported by Congress' recodification of the Act in light of the courts' consistent interpretation of the phrase "intent to defraud." Congress has not modified this language despite amending the Act and its predecessor several times. While Congressional inaction generally reveals nothing more than Congress' inaction itself, when the legislature, with knowledge of the courts' interpretation of a statute, does act and recodifies that statute with no substantive change to the relevant language, the courts can infer that Congress approves of their interpretation. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *U.S. v. Mitchell*, 39 F.3d 465, 469-70 (6th Cir. 1994). Thus, "private relief is only available under the Odometer Act ... when a plaintiff has established a defendant's intent to defraud the plaintiff about the vehicle's mileage." *Locascio*, 309 F.Supp.2d at

10

271.

## B.  Application to the Present Case

In order to show an intent to defraud under the Act, Plaintiff must show an intentional

violation or that Auto Sports exhibited a reckless disregard for the truth as to the Jeep's mileage. *See*

*Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 808 (7th Cir. 1988) (concluding that mere

negligence is not sufficient to demonstrate intent to defraud under the Odometer Act). Auto Sports

has come forward with evidence supporting its assertion that it did not have an intent to defraud as

to the mileage of the Jeep. Auto Sports' evidence demonstrates that while the Jeep was in Auto

Sports' possession, it disclosed the mileage to Charles Sutter, who acknowledged  seeing the

mileage on the Jeep's title and on the odometer itself. There is no dispute that the mileage was

accurate, nor does anyone contend that Auto Sports misrepresented the mileage of the Jeep or

tampered with its odometer. Moreover, there is no evidence showing that Auto Sports had any

reason to doubt the accuracy of the odometer reading.

In addition, at the time Auto Sports acquired the Jeep, it had 61,836 miles on it. When Mr.

Sutter put the Jeep up for sale and Plaintiff bought it, the odometer read 63,305 miles, an increase

of 1469 miles in four months. Plaintiff had notice that the Jeep had at least 63,000 miles based on

Mr. Sutter's ad in Truck Trader Magazine, and he does not contest the accuracy of these numbers

Moreover, the fact that the mileage at the time Plaintiff purchased the Jeep was greater than the

mileage when Mr. Sutter purchased the Jeep negates an inference to defraud as to the Jeep's

mileage.

Finally, the evidence shows that Mr. Sutter did not conceal the Jeep's title but made it clear

that there was a problem in processing the transfer of title from Auto Sports to himself.

Consequently, this is not a case where the transferor possessed a motor vehicle title and actively

11

withheld it from the transferee in order to mislead him as to the mileage. In fact, Mr. Sutter's deposition references a letter he sent to Plaintiff after Plaintiff purchased the Jeep in which Mr. Sutter apologizes to Plaintiff for the confusion over the title. *See* Sutter Dep. at 84. Consequently, Auto Sports' showing demonstrates that it did not intend to defraud Plaintiff as to the mileage of the Jeep.

In contrast to Auto Sports, Plaintiff has not come forward with any evidence that rebuts the strong inference that Auto Sports did not intend to defraud Plaintiff as to the Jeep's mileage. The court in *Locascio* granted summary judgment in favor of the defendant on similar facts. There the plaintiff claimed that the defendant violated the Odometer Act by failing to disclose the vehicle's mileage on the title in an effort to conceal that the vehicle's title was branded rebuilt. *See Locascio*, 309 F.Supp.2d at 269. The court rejected this argument, finding that the plaintiff had not presented any evidence of a misrepresentation as to the vehicle's mileage. *See id.* at 271. *See also Ioffe*, 414 F.3d at 713-14.

As in *Locascio*, Plaintiff has not presented evidence indicating that Auto Sports intended to defraud him as to the Jeep's mileage. Plaintiff has presented numerous exhibits detailing Auto Sports' complications with Michigan's motor vehicle code. However, these violations are unrelated to the present case and say little about Auto Sports' state of mind regarding the accuracy of odometer readings. In addition, Plaintiff has provided copies of documents which he contends were fabricated for the purposes of this lawsuit, indicating a fraudulent intent. These documents include the purchase agreement form and title application that Justin Misner faxed to Charles Sutter on October 8, 2005, and the purchase agreement form and title application from Auto Sports' sale to Mr. Sutter. These documents have no relation to odometer fraud. Although there may be factual issues concerning whether Plaintiff was notified that the Jeep was salvaged, Plaintiff does not

12

contend that he was misled as to the Jeep's mileage. Tellingly absent is any evidence of a benefit to Auto Sports. While privity is not required to be held liable under the Odometer Act, Plaintiff has not shown that either Auto Sport's or Mr. Sutter were able to obtain a higher price for the Jeep by misrepresenting its mileage.

The Court finds that at most Plaintiff has shown that Auto Sports was negligent in processing title work, which is insufficient to demonstrate that it intended to commit odometer fraud. Therefore, Plaintiff cannot prove a necessary element of his claim under the Odometer Act and Auto Sports is entitled to summary judgment.

## C.  Defendant Charles Sutter

Based on the Court's conclusion that the intent to defraud necessary under the Odometer Act must be specific, the Court concludes that Plaintiff has failed to state a claim against Defendant Sutter. Plaintiff's complaint details the chronology of the Jeep from the date Defendant Auto Sports purchased it in Indiana to the present. However, nowhere in the complaint does Plaintiff allege that anyone misrepresented the accuracy of the Jeep's odometer. In fact, Plaintiff does not contest the accuracy of the odometer.

Plaintiff's lone allegation under the Odometer Act with respect to Defendant Sutter is that he withheld the title, which happens to contain the mileage disclosure, with an intent to defraud. *See* Pl.'s Compl. ¶ 23. Yet it is apparent from Plaintiff's complaint that he does not claim fraud as to the mileage, but fraud as to the status of the vehicle as salvaged. Plaintiff's filings are replete with allegations that he would not have bought it if he had known it was salvaged. These allegations have nothing to do with the accuracy of the odometer or any representation as to the mileage. Accordingly, Plaintiff's claim of fraud does not arise under the Odometer Act, but under general common law principles, and is a matter of state law. Thus, Plaintiff has failed to state a claim under

13

the Odometer Act against Defendant Charles Sutter, and his complaint must be dismissed.

## V. CONCLUSION

Plaintiff has failed to present sufficient evidence from which the Court can conclude that he will be able to meet his burden of proof at trial with respect to Defendant Auto Sports' intent to defraud. Thus, Plaintiff has failed to carry his burden under FED. R. CIV. P. 56(e) and Defendant Auto Sports is entitled to summary judgment. Furthermore, a review of the pleadings reveals that Plaintiff has failed to state a claim under the Odometer Act as to Defendant Charles Sutter. Consequently, this claim must be dismissed as well. Therefore,

IT IS ORDERED that Defendant Auto Sports' Motion for Summary Judgment is GRANTED and Plaintiff's claim as to Auto Sports is HEREBY DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's claim as to Defendant Charles Sutter is dismissed for failure to state a claim under the Odometer Act.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  February 7, 2007

14

CERTIFICATE OF SERVICE

     The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 7, 2007.


                    s/Marie E. Verlinde_____
                    Case Manager
                    (810) 984-3290